# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Lisa S., | ) |
|     Plaintiff, | ) |
| v. | ) Case No.: 20-cv-50163 |
| | ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) |
| Commissioner of Social Security, [1] | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

    Plaintiff's motion for summary judgment [27] is granted and the Commissioner's motion for summary judgment [35] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

## BACKGROUND

A. Procedural History

    On January 20, 2017, Plaintiff Lisa S. ("Plaintiff") filed an application for Social Security disability insurance benefits and an application for supplemental security income under Titles II and XVI of the Social Security Act. R. 1494. She alleged a disability beginning on August 8, 2016. *Id.* The Social Security Administration ("Commissioner") denied her applications on March 22, 2017, and upon reconsideration on May 22, 2017. R. 117-120, 124-126. Plaintiff filed a written request for a hearing on June 15, 2017. R. 139-140. On October 24, 2018, a hearing was held via videoconference by Administrative Law Judge ("ALJ") Daniel Dadabo where Plaintiff appeared and testified. R. 32-65. Plaintiff was represented by counsel. An impartial vocational expert also appeared and testified. *Id.*

    On December 21, 2018, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 1494-1509. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [33]. Now before the Court are Plaintiff's motion for summary judgment [27] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [35].

---

[1] Kilolo Kijakazi has been substituted for former Commissioner of Social Security Andrew Saul. Fed. R. Civ. P. 25(d).

B. Medical Background[2]

According to the medical records provided, beginning in early 2015, Plaintiff was seeing Dr. David Yeager, a podiatrist, for bilateral heel pain. She had received an injection for the pain and at her January 26, 2015, visit, reported 80% improvement. R. 1433-34. Also at that time, Plaintiff was taking Albuterol, Naproxen, Neurontin, and Citalopram. *Id.* In March of 2015, Plaintiff returned to Dr. Yeager complaining of right ankle pain. She related that she was experiencing problems going up and down the stairs. She was assessed for status post TN (talonavicular) joint fusion in her right ankle with degenerative joint disease. R. 1425. She was provided with a note from the doctor to "modify her apartment" and return to the clinic as needed. *Id.* On October 14, 2015, Plaintiff saw Dr. Yeager for a re-check of her right foot and ankle pain. She reported she was experiencing a burning sensation in her feet. She was advised to continue using the ankle foot orthosis and to continue treating any back and neck issues. Dr. Yeager advised Plaintiff at that time that if she continued to have issues with her feet and all conservative efforts have been exhausted, they will discuss surgical intervention. R. 1329.

In March of 2016, Plaintiff returned to Dr. Yaeger for a re-check of her right foot and ankle pain. She reported that pain increased with ambulation and was relieved by rest. She was assessed with degenerative joint disease of bilateral feet and right ankle. At that visit, Plaintiff received a medication injection over the talonavicular joint on the right foot and ankle. She was advised to use her orthotics and brace. In September of 2016, Plaintiff went to the emergency department for lower back pain and pain in her feet. At that time, she stated she could barely walk and had been using a cane to get around. She stated she was taking the previously prescribed Gabapentin for her foot pain and that the medication sometimes worked and sometimes did not. She followed-up at the emergency department the following day. R. 1234-35. On September 12, 2016, Plaintiff went back to Dr. Yeager for a re-check of her degenerative joint disease in her ankles. She reported that the most significant pain was in the plantar aspect bilateral heel. She stated that the pain was increased with ambulation and relieved with rest. She received a medication injection in her plantar and bilateral heel areas. She was advised to stretch and ice the area. R. 1232.

On April 4, 2017, Plaintiff returned to Dr. Yeager for a re-check of her right foot pain. She again noted that the pain was increased with ambulation and relieved by rest. She received a right foot X-ray on the same day which noted no acute fractures or dislocations and mild chronic degenerative arthritis throughout the right forefoot. Dr. Yeager discussed with her conservative surgical options. R. 1099. On August 16, 2017, Plaintiff had another x-ray of her right foot. The X-ray showed no significant changes from the April 4, 2017, X-ray. R. 1026. The next day, Plaintiff saw Dr. Yeager in his clinic for a complaint of right foot pain. She related that while she tried to stay off of her foot as much as possible and tried ibuprofen and ice, she received no relief from the pain. R. 1021-22. On September 1, 2017, Plaintiff underwent a surgical procedure to remove hardware from her right foot from a previous surgery. One week after surgery, Plaintiff was seen by Dr. Yeager. At that time, Plaintiff reported her pain at a 6 on a 10 scale. Dr. Yeager noted some postoperative swelling but no sign of infection. R. 987-88. She was again seen by Dr. Yeager the following week where the staples and sutures were removed. R. 982. Plaintiff again

---

[2] The Court summarizes Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history, or the ALJ's complete review.

saw Dr. Yeager on September 28, 2017, for a post-surgical follow-up. R. 977. In October 2017, Plaintiff received another X-ray of her right foot following her complaints of foot pain. R. 976. Shortly thereafter, Plaintiff was referred to physical therapy. R. 969-70. Plaintiff participated in physical therapy in October 2017. She reported some improvement and some continued soreness and pain, especially over the course of the day. Plaintiff also reported foot swelling when she was on her feet for most of a day. She noted that the swelling would come and go. Plaintiff noted "extreme difficulty" walking and going up or down stairs at her October 23, 2017, physical therapy evaluation. R. 946-968. Plaintiff saw Dr. Yeager multiple times several months following her surgical procedure. She continued to report pain and swelling to her right foot. R. 906-42. On February 28, 2018, Plaintiff had an X-ray of her right foot and followed-up with Dr. Yeager. At that time, she reported significant pain – 8/10 – but that her pain had improved since prior to the surgery. R. 1464, 861-68. On May 8, 2018, Plaintiff had another X-ray of her right foot and ankle. The X-ray showed no clinical changes since the previous X-ray. R. 856. At the end of July 2018, Plaintiff's right ankle was X-rayed again. The X-ray report concluded that the ankle was stable with no evidence of acute fracture or dislocation. R. 1442. In mid-August 2018, Plaintiff received another CT scan and an MRI on her right ankle. This MRI report noted a "non union bone cyst," and a "worrisome lesion within the medial distal tibial metadiaphysis." R. 1437-39.

On May 19, 2017, state-agency medical consultant Dr. Richard Bilinsky reviewed Plaintiff's medical records. He did not examine Plaintiff and did not examine records or evidence submitted after May 19, 2017. Dr. Bilinsky noted Plaintiff's right ankle fusion. His report included Plaintiff's self-reporting of her ankles locking up, difficulty putting on socks and shoes, an ability to do some household chores, and her ability to drive on her own. He found her statements "partially consistent" with the record evidence. He opined that while Plaintiff noted limitations from her ankle and foot surgery, there was no evidence to support the severity of the limitations as described. As to Plaintiff's residual functional capacity, Dr. Bilinsky found that Plaintiff did have exertional limitations, but could occasionally lift or carry up to 50 pounds and could stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday. R. 88-108. On March 17, 2017, state-agency medical consultant Dr. Young-Ja Kim reviewed Plaintiff's medical records. Likewise, he did not examine Plaintiff and did not examine records or evidence submitted after March 17, 2017. Dr. Kim noted Plaintiff's history of foot and ankle fusion, but no evidence to support the severity of limitations as described. As to Plaintiff's residual functional capacity, Dr. Kim made the same findings as Dr. Bilinsky. R. 66-84.

At her October 24, 2018, hearing, Plaintiff testified that her right foot pain was usually at a level 7 or 8 on the 10 scale. She treated the pain with ice and elevation. She also testified that she had been working for Casey's General Stores as a cook, but since her foot surgery, she had not worked. She testified she could walk for a half of a block and stand for about 30 minutes, after which time her feet would go numb. At the time of the hearing, Plaintiff stated she would drive about three times a week, typically to take her children to school, go to the store, and to doctors' appointments. She testified she was taking Tramadol, Tylenol, and sometimes ibuprofen for pain. She also testified she took Gabapentin four times a day.

C. The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether

3

Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since August 8, 2016, when Plaintiff alleges her disability arose. R. 1496. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease and thoracic kyphosis superimposed upon multilevel spondylosis, resulting in central and neuroforaminal stenosis and cord contact, without myelopathy; level I-II obesity; and, status post September 2017, podiatric surgery for right talonavicular fusion and right navicular cuneiform fusion secondary to extensive mid-foot arthritis and ankle joint instability. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R.1497. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work subject to only occasional stooping, crouching, crawling, kneeling, and balancing; only occasional ramps and stairs; no ladders, ropes or scaffolds; no work around unprotected heights, heavy equipment, operating machinery or hazards; and no concentrations of vibration. R. 1500. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 1507. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could have performed, including document specialist, touch-up screener, and charge account clerk. R. 1507-08. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from August 8, 2016, to December 18, 2018, the date of the decision. *Id.*

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id.* (quoting *Biestek v. Berryhill*, __U.S.__, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of

medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff argues that the matter should be remanded because the ALJ's conclusion that Plaintiff could perform the standing and walking requirements of sedentary work without any need to elevate her feet for some portion of the workday, was not supported by substantial evidence and the relevant legal standards. Plaintiff specifically argues the ALJ should have re-submitted her case to medical expert scrutiny in light of potentially determinative evidence which came about after the state-agency medical consultants reviewed Plaintiff's case. As noted above, the state-agency medical consultants submitted their reports in March and May of 2017. Plaintiff's medical records show Plaintiff's right foot was subject to multiple scans – both CT and MRI – in 2018. These records were not reviewed by the medical consultants.

Plaintiff notes that the ALJ does not mention in his decision Plaintiff's August 2018 CT and MRI scans, and nor were these scans reviewed by the medical consultants. Plaintiff complains that the ALJ essentially "played doctor" by implicitly concluding that the 2018 scans noting a "non union" and a "worrisome" lesion would have no effect on Plaintiff's ability to stand and walk, concluding that despite what these scans purportedly show, Plaintiff would still be able to work. Plaintiff argues this was an "ultimate medical judgment" on the part of the ALJ. [27], 6. The Seventh Circuit has "said repeatedly that an ALJ may not "play[ ] doctor" and interpret "new and potentially decisive medical evidence" without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). *See also, Graf v. Berryhill*, No. 17 CV 50086, 2018 WL 6018604 (N.D. Ill. Nov. 16, 2018) (the court's finding that the ALJ impermissibly "played doctor" was supported "by the fact that no medical opinions supported the ALJ's specific analyses of the medical record or her specific RFC findings"). Plaintiff further argues that by not including a reference to the 2018 scans in his decision, the ALJ "cherry-picked" facts that support an unfavorable decision while ignoring evidence that would point to a disability. "The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). *See also Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (While an ALJ need not mention every piece of evidence in the record, he "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Defendant argues the ALJ did not "play doctor" by filing his decision implicitly addressing medical records that were not submitted to the state agency medical consultants. Specifically, Defendant argues that the ALJ was not required to consider every piece of medical evidence, the ALJ properly considered the record, and Plaintiff has failed to show how the 2018 imaging was potentially decisive in demonstrating that Plaintiff could not work without elevating her right foot or stand and walk enough to perform sedentary work. As to Plaintiff's argument that the ALJ "cherry-picked" the facts by omitting a reference to Plaintiff's August 2018 scans, Defendant argues that Plaintiff has failed to demonstrate that these scans contradict the ALJ's RFC determination that Plaintiff could perform sedentary work as defined in 20 C.F.R. 404.1567(a) and

5

416.967(a) – a determination that provided more limitations than that as recommended by the medical consultants.

As relied on by Plaintiff, the Seventh Circuit in *McHenry* held that the ALJ "was not qualified to determine on his own whether the MRI results would corroborate the claimant's complaints 'without the benefit of an expert opinion.'" *McHenry*, 911 F.3d at 871 (citing *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018)). Defendant distinguishes *McHenry* from Plaintiff's case in that here, the ALJ did not reject a medical opinion (the August 2018 scans) because Plaintiff did not submit a medical opinion suggesting that the scans evidenced any limitations. However, as pointed out in *Kemplen v. Saul*, 844 Fed. Appx. 883, 888 (7th Cir. 2021), a remand was ordered in *McHenry* because of the "ALJ's failure to obtain a medical opinion without reference to whether the claimant could or should have sought opinion evidence." *Id*. In *Kemplen*, plaintiff asserted that her degenerative disc disease and osteoarthritis deteriorated after the opinion of the medical consultant was filed, and that the ALJ should have ordered the consultant to review the new evidence. *Id*. at 884. Specifically, plaintiff in *Kemplen* underwent an MRI in December of 2015 which showed "mild degenerative changes" in her spine. In February of 2016, the Commissioner denied her application for reconsideration. At the time the Commissioner made its ruling, it had the state agency physician's January 2016 report (stating that plaintiff had light exertional limitations) but did not include her December 2015 MRI. *Id*. at 884-85. In September of 2017, plaintiff underwent another MRI as well as physical therapy. Plaintiff had testified that her condition had worsened. *Id.* at 885. Following a hearing in October of 2017, the ALJ concluded Kemplen was not disabled and gave significant weight to the state medical opinion which he deemed "not inconsistent" with the 2017 evidence, including the MRI results. *Id*. at 886.

On appeal, Kemplen argued the ALJ "played doctor" by not securing a medical opinion to include the 2017 MRI results that post-dated the state medical opinion. *Id*. The Seventh Circuit held that the "[t]he issue, then, comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by the non-examining physician and by evaluating himself the significance of [the subsequent] report', or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* at 887. The Seventh Circuit found it to be a "close call," but held that the ALJ erred by not obtaining a medical opinion interpreting the 2017 scans. *Id*. The *Kemplen* court concluded by noting that it is the plaintiff's burden to "produce evidence, not necessarily opinion" and stating: "[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." *Id*. at 888. *See also Joseph J.L. v. Commissioner of Social Security*, No. 3:20-CV-621-MAB, 2022 WL 856811, at *9 (S.D. Ill. March 23, 2022) ("there is no medical opinion in the record that sheds light on the significance of the 2017 MRI…[g]iven the unknown but potential significance of the 2017 MRI, the ALJ erred in drawing conclusions from the technical medical evidence without relying on a medical expert"); *Donna M.J. v. Commissioner of Social Security*, No. 3:20-CV-00556-MGG, 2022 WL 594144, at *6 (N.D. Ind. Feb. 28, 2022) ("the ALJ summarized the March 2019 x-ray and April 2019 MRI without further explanation…the ALJ [does not] explain how the evidence is or is not inconsequential to his final determination…the ALJ did not create a 'logical bridge' between the evidence and conclusion as required by the standard of review"); *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *8 (N.D. Ill. May 14, 2021) ("evidence postdating the state agency physicians' opinions did change the picture of Annette's condition to a degree that the ALJ erred…by evaluating himself the

significance of the subsequent evidence"); *Nichole M.S. v. Saul*, No. 19 C 7798, 2021 WL 534670, at *7 (N.D. Ill. Feb. 12, 2021) ("despite Nichole's attorney stating the record was complete, the ALJ still had a duty to obtain additional evidence if the record was insufficient to make a disability determination…[I]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations) (citations and quotations omitted)).

Here, the Court agrees with Plaintiff that the ALJ's decision was reached without an appropriate medical opinion addressing the "potentially decisive evidence" that postdates the medical consultants' opinions. The Court does not presume to know how to interpret Plaintiff's August 2018 CT scan and MRI on her right ankle noting a "non union bone cyst," and a "worrisome lesion within the medial distal tibial metadiaphysis." R. 1437-39. However, as pointed out by Plaintiff, it is possible that these scan results could reasonably be interpreted by a medical professional to suggest that Plaintiff cannot stand or walk for two hours per workday – potentially leading to a finding of disability. Also, and importantly, the ALJ did not mention the August 2018 CT and MRI results in his findings. The ALJ did state that he had "given the claimant's impairments their widest reasonable application consistent with the evidence" when finding Plaintiff "significantly more limited in terms of exertion" than was found by the medical consultants. R. 1500. This may infer that the ALJ did take Plaintiff's 2018 scans into consideration; however, despite Defendant's position that the ALJ's RFC determination is supported by the fact that no medical source opined a limitation greater than the ALJ's, it is possible that a medical opinion regarding the August 2018 scans could lead to a finding of disability. For these reasons, the Court finds that without the aid of an expert medical opinion on the 2018 scans, the ALJ did not support his decision with substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [27] is granted and the Commissioner's memorandum in support of motion for summary judgment [35] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

Date: 09/23/2022           ENTER:

*Margaret J. Schneider*
United States Magistrate Judge